## Case No. 17,447.

### WESTFALL v. BARNEY.

[See Case No. 17,448.]

---

## Case No. 17,448.

### WESTFALL v. SHOOK.

[5 Blatchf. 383; [1] 5 Int. Rev. Rec. 54.]

Circuit Court, S. D. New York. Feb. 11, 1867.

INTERNAL REVENUE—TAX ON IMPORTED SPIRITS— GOODS IN BONDED WAREHOUSE.

1. Under the 7th section of the act of March 7, 1864 (13 Stat. 16), an additional duty of forty cents per gallon was imposed on all distilled spirits imported from foreign countries prior to the passage of that act.

2. The fact that such spirits were in a bonded warehouse at the time of the passage of that act does not exempt them from such tax.

3. Under that act, such duty is to be collected in such manner as the secretary of the treasury may direct, and he has power to direct it to be paid to a collector of internal revenue.

[2] [The plaintiff, in January, 1864, imported and entered at this port a quantity of gin

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [From 5 Int. Rev. Rec. 54.]

from Rotterdam, and entered it the same month. The duty on this gin was $1 per gallon, under the act of July 14, 1862 [12 Stat. 543]. On the 29th of April, 1864, the plaintiff went to Collector Barney and tendered this money as duties, and demanded the goods. The collector refused to deliver the goods, claiming that by virtue of section 7, Act March 7, 1864 [13 Stat. 16], entitled "An act to increase the internal revenue," an excise tax of 40 cents per gallon, in addition to the above tax, was levied upon this gin, and that before he (the collector) would surrender it, the plaintiff must go to Mr. Sheridan Shook, and pay this 40 cents per gallon additional, bring back his receipt, and then he (Mr. Barney) would accept the import duty of $1 per gallon, and surrender the merchandise. The plaintiff went to Mr. Shook as directed, paid under protest, received his goods from Mr. Barney, and now brings this suit against both parties.

[The question was one purely of law, and was fully argued on both sides. Mr. Sidney Webster and Mr. Malcomb Campbell for the plaintiff contended that by the warehouse act, there was an implied contract between the government and importer that the latter should pay only the import duties, hence the exaction of 40 cents was illegal, it being an interference with vested rights.

[Second. That this tax was an excise, and would not lie against goods in the custom house, and before they passed into the possession of the importer; that the law was really levying an excise tax on foreign goods, which was against statute and judicial decisions.

[Third. That the tax laid was an "additional tax," and if it was an "excise" there was no preceding "excise tax" to add it to; and if it was held by court to be an "impost" tax, that then Mr. Shook was not the proper officer to collect it.

[Mr. Ethan Allen, Associate U. S. Dist. Atty., argued the case for the government, and contended:

[First. That if any contract existed between the government and the importer, under the warehouse act, this was, at best, only an implied contract, and could at any time be changed by statute; that the power of congress was supreme and absolute, under the constitution, and they could even abolish the warehouse act if so disposed. If they could abolish the warehouse system, they could surely regulate it.

[Second. That even if the tax in question was an "excise" and not an "import" tax, it fell within the power of congress to levy the same, and the same attached to the foreign goods so soon as they entered the port; that as to the collection by Mr. Shook, at best it could only be a question of form (if the right to levy the tax was sustained), and this inferior question as to the mode of collecting the tax, could not be held in any way to interfere with the right to make it; that the

secretary of the treasury designated Mr. Shook, as he had a right to do, under the statute, and no question could be against it.

[Third. That the tax being a lien upon the goods so soon as they arrived in the port, the government had a right to collect this lien in its own way, and was entitled to it before the goods passed into the possession of the importer.

[Fourth. That assuming the government to be wrong in all the above positions, that this suit would not lie against Mr. Shook, because he did not exact the duties, but only received them when tendered; and, therefore, as to him, it was a voluntary payment; and he, having paid the money over to the United States, he could not be compelled to pay it back; that the suit would not lie against Mr. Barney because he had not received the money, and no protest was made to him and no appeal taken to the secretary of the treasury conditions precedent by the statute, before a suit will lie against the collector of the port for the recovery of duties.] [2]

Sidney Webster and Malcomb Campbell, for plaintiff.

Ethan Allen, Asst. Dist. Atty.

SMALLEY, District Judge. It does not appear that the defendant made any claim for the money paid, or that he had the property in his possession, or had, or attempted to exercise, any control over it. It is urged, on the part of the plaintiff, that this tax was in violation of law because it was an impost tax, and because, if it was an internal revenue tax, the property was not in a condition to be taxed, being at the time in a bonded warehouse [not withdrawn or offered for sale.] [2]

The act under which the tax is claimed is very clear and explicit in its provisions. It is the 7th section of the act of March 7th, 1864 (13 Stat. 16). The first clause of that section provides, "that, from and after the passage of this act, in addition to the duties heretofore imposed by law, there shall be levied, collected and paid, on spirits distilled from grain or other materials, whether of American or foreign production, imported from foreign countries previous to the first day of July next, of first proof, a duty of forty cents on each and every gallon, and no lower rate of duty shall be levied or collected than upon the basis of first proof, and shall be increased in proportion for any greater strength than the strength of first proof." If the section stopped here, I might be disposed to say, that, as the goods had been imported, and placed in a bonded warehouse, before the passage of the act, this first section did not apply to them, and I might be disposed to read the act as if the words "to be" were interpolated before the word "imported." But the second clause of the section leaves no room for doubt. It was clearly the intention of congress, by adding the second clause, to go further than in the first. The second clause reads thus: "And that, upon

[2] [From 5 Int. Rev. Rec. 54.]

all such spirits imported prior to the passage of this act, there shall be levied, collected and paid an additional tax of forty cents per gallon, to be collected under the direction and according to regulations established by the secretary of the treasury."

The application of the act to these goods must depend on the simple question—were they imported? If they were, does the fact of their being in a bonded warehouse, subject to withdrawal, and with the duties on them unpaid, put them in a better condition, to exempt them from this tax, than if they had been entered for consumption and the duty on them had been paid, and they had been stored in a private warehouse?

That the goods were imported, within the meaning of the act, both parties agree. The language of the act does not leave any room for doubt. It applies to all spirits "imported prior to the passage of this act." The construction I should be disposed to give to the first clause of the section would make it apply only to goods imported between the 7th of March and the 1st of July. That, too, would seem to have been the view taken of it by congress, for, in the second clause of the section, they make a sweeping provision in regard to all spirits "imported prior to the passage of this act."

It is argued, for the plaintiff, that, as these goods were in a bonded warehouse, they were entitled to greater privileges than other goods not similarly situated. I cannot see the force of that claim. The assumption can rest only on the ground that bonded warehouses are established as a matter of contract between the government and the importer, which the government has no right to change without the consent of the importer. It is true, that some senators went almost, though not quite, as far as that, in the discussion which was had upon the passage of the act. But the opinion of an individual member of a legislative body would be a bad criterion by which to decide what the law-makers themselves intended. Members of legislative bodies frequently differ in opinion among themselves. If congress have the power, as they have if they choose, to destroy the warehouse system at once, without any notice, they surely have the power to impose additional burthens upon goods in warehouse. In other words, it was within the power of congress to do precisely what they did in this case. Whether it is wise for them to do this, or that, or the other thing, is a question for legislative discretion, not for judicial construction.

[It is argued that there was a treaty with Belgium, and that the construction given to this warehouse system, as claimed by the government, would be a violation of that treaty. That is a question, however, which can hardly arise in this case. If the Belgian government made a contract with our government—for it must be a contract as a treaty is nothing more than a contract between nations—and the Belgian government claims that we violated it, our government may be called upon to make redress; but for citizens of our own country to avail themselves of a treaty of this kind, in this way, is beyond my conception to understand.] [2]

I think it very clear, that congress intended to tax these spirits; and they have used most explicit language to carry out that intent. It is said, that. as the spirits had been taxed in another district, and under other circumstances, they ought not to be subject to the additional tax imposed in this case. With that the court has nothing to do. It is a question for the action of other officers of the government, and not for judicial action at all.

The act authorizes the secretary of the treasury to collect the tax in such manner as he may direct, and he chose simply to issue a circular ordering it to be paid to the collector of internal revenue. That was in strict compliance with the act. Congress might have thrown other guards about it, if they chose. but they left it to the discretion of the secretary of the treasury, and he ordered the collection of the tax in the manner prescribed. The law authorized the collection of the tax, and it was the duty of the secretary of the treasury to see that it was collected. He prescribed this mode, and I cannot see any wrong that the plaintiff has sustained from the payment of the tax thus levied upon his goods. There must, therefore, be a verdict for the defendant.